UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOIS METTEN, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>      v.<br><br>TOWN SPORTS INTERNATIONAL, LLC, and TOWN SPORTS INTERNATIONAL HOLDINGS, INC. d//b/a NEW YORK SPORTS CLUBS, BOSTON SPORTS CLUBS, WASHINGTON SPORTS CLUBS and PHILADELPHIA SPORTS CLUBS,<br><br>                Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY** |

Plaintiff Lois Metten (hereinafter "Plaintiff"), by her undersigned counsel, for this class action Complaint against Defendants and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (collectively, "Defendants" or "Town Sports International"), alleges as follows:

## I. INTRODUCTION

1.     <u>Nature of Action</u>.  Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## II. PARTIES

2.     Plaintiff Lois Metten ("Plaintiff") is a resident of the state of New York.

3.     Defendant Town Sports International, LLC is a New York limited liability company whose principal office is located at 5 Penn Plaza, 4th Floor, New York, NY 10001, and whose registered agent for service of process is CT Corporation System, 111 8th Avenue, New York, NY 10011.

4.     Defendant Town Sports International Holdings, Inc. is a Delaware corporation whose principal office is located at 5 Penn Plaza, 4th Floor, New York, NY 10001, and whose

registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

## III.  JURISDICTION AND VENUE

5.Subject Matter Jurisdiction.  This Court has subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's TCPA claims arise under the laws of the United States, specifically 47 U.S.C. § 227. Furthermore, this Court has original jurisdiction over Plaintiff's claims pursuant to the "Class Action Fairness Act," 28 U.S.C. §§ 1332(d), 1453. While it is anticipated that neither Plaintiff nor any individual class member's claims exceeds $75,000, the aggregate amount in controversy for the Class exceeds $5 million exclusive of interest and costs, and Plaintiff is a citizen of a different state from Defendant Town Sports International Holdings, Inc.

6.Personal Jurisdiction.  This Court has personal jurisdiction over Defendant Town Sports International, LLC because it submitted to New York jurisdiction by registering with the Department of State to do business in this state. Further, this Court has personal jurisdiction over both Defendants because Defendants committed a substantial part of the wrongful acts alleged in this Complaint in New York.

7.Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Defendant Town Sports International, LLC resides in this District, where a substantial part of the events giving rise to the claims occurred.

## IV.  THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8.In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9.The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

10. "Automatic telephone dialing system" means "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1).

11. The Congressional findings accompanying the TCPA repeatedly stress the need to protect consumers' privacy, evidencing consumer outrage over automated or prerecorded telephone calls as a nuisance and invasion of privacy. Pub. L. 102–243, § 2, 105 Stat. 2394 (1991).

12. The Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, requires callers to obtain "prior express **written** consent" before initiating, or causing to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing. 47 C.F.R. § 64.1200(a)(2).

13. "Prior express **written** consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, includes the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered, and informs the person called that he or she is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services. 47 C.F.R. § 64.1200(f)(8) (emphasis added).

14. FCC rules also "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

15. The FCC confirmed this principle in 2013, when it explained that "a seller …. may be held vicariously liable under federal common law principles of agency for violations of

either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013).

## V.  SHORT MESSAGE SERVICES ("SMS")

16. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone and fax have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

17. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. Short Message Services, or "SMS," is a messaging system that allows for the transmission and receipt of short text messages to and from cellular telephones.

18. SMS messages are directed to a cellular device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's cellular telephone rings, alerting him or her that a message has been received.

19. A text message is a call within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-53 (9th Cir. 2009).

20. As cellular telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

21. Businesses utilizing SMS messaging programs routinely use short codes to send and receive SMS messages.

22. Short codes are special telephone numbers that are significantly shorter than full telephone numbers—generally five to six digits in length.

23. Businesses use short codes to opt-in consumers to their SMS programs as well as to send text message advertisements, such as coupons, offers, and promotions, to customers.

24. The FCC has long recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

Frequently "in the form of unwanted text messages of all kinds – from coupons to phishing schemes," the Pew Research Center reports that "57% of adults with cell phones have received unwanted or spam text messages on their phone." [1]

## VI.  FACTUAL ALLEGATIONS

### A.  Factual Allegations Regarding Defendants

25. Defendants own and operate health and fitness facilities in New York, Boston, Washington, D.C., and Philadelphia, doing business in those locations as New York Sports Clubs, Boston Sports Clubs, Washington Sports Clubs, and Philadelphia Sports Clubs, respectively. They claim to have "the largest gym network in the Northeast." *See* https://www.newyorksportsclubs.com/about-us (last visited May 9, 2018).

26. Defendants advertise their gyms through bulk SMS messaging, with software provided by CallFire, Inc. The software has the capacity to store and dial telephone numbers *en masse*. Indeed, CallFire, Inc. claims to have "the most powerful and versatile SMS text messaging platform on the market. Whether you want to send out promotions, discounts, updates or notifications - text marketing lets you reach **thousands instantly**." *See* https://www.callfire.com/products/text-messaging (last viewed May 9, 2018) (emphasis added). CallFire's software can import entire contact lists and then "[s]chedule to run [the texts] at the best time for your clients." *Id.* All without further input from the caller.

27. Under the standards outlined by the FCC, and to the extent that Defendants hired third parties to send Spam Texts on their behalf, Defendants are directly liable to Plaintiff and members of the Class as well as vicariously liable through theories of agency such as actual authority, apparent authority, and ratification.

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited January 15, 2015).

**B.     Factual Allegations Regarding Plaintiff**

28.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

29.    Plaintiff is the account holder of cellular telephone, number (516) 993-XXXX.

30.    Plaintiff does not have a gym membership with Defendants, and has never had a gym membership with Defendants.

31.    Furthermore, Plaintiff did not sign up to receive Spam Texts from Defendants.

32.    Nonetheless, on April 17, 2018, Plaintiff received a Spam Text advertisement on her cellular telephone from, or on behalf of, Defendants.

33.    The Spam Text read:  "New York Sports Clubs 3 DAY SALE $1 to join + REST OF APRIL & ALL OF MAY FREE! Ends 4/19 Join in club or online www.newyorksportsclubs.com Reply STOP to opt out"

34.    The Spam Text was sent from short code 67076. On information and belief, this short code is registered to CallFire, Inc.

35.    Plaintiff did not provide prior express written consent to receive Spam Texts on her cellular telephone number from, or on behalf of, Defendants.

36.    Plaintiff's privacy has been violated by the above-described Spam Text from, or on behalf of, Defendants, which was annoying, harassing, and constitutes a nuisance.

37.    Defendants have sent a significant number of Spam Texts to persons on their cellular telephones in New York and throughout the entire United States.

38.    Plaintiff and all members of the Class, defined below, have been harmed by Defendants' acts because their privacy has been violated, they were subjected to annoying and harassing Spam Texts that constitute a nuisance, and they were charged for incoming messages. Furthermore, every Spam Text used the recipient's time and mental energy.

## VII.  CLASS ACTION ALLEGATIONS

39. <u>Class Definition</u>.  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of a Class defined as follows:

> All persons to whom: (a) Defendants and/or a third party acting on Defendants' behalf, sent one or more text messages; (b) promoting Defendants' products or services; (c) to their cellular telephone number; (d) through the use of an automatic telephone dialing system; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

Excluded from Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

40. <u>Numerosity</u>.  The Class is so numerous that joinder of all members is impracticable. On information and belief, Plaintiff alleges that the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

41. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and members of the Class. These common questions of law and fact include, but are not limited to, the following:

    a. Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A) by sending Spam Texts to the cellular telephone numbers of Plaintiff and the Class;

    b. Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by sending Spam Texts to the cellular telephone numbers of Plaintiff and the Class, thus entitling Plaintiff and the Class to treble damages;

      c.      Whether the Spam Texts constitute advertising or telemarketing;

      d.      Whether the Spam Texts were made using an "automatic telephone dialing system"; and

      e.      Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf should be enjoined from violating the TCPA in the future.

42.   Typicality.  Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

43.   Adequacy.  Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions and TCPA class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have interests that are contrary to or that conflict with those of the proposed Class.

44.   Predominance.  Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

45.   Superiority.  A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication,

provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

46. <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis. Moreover, on information and belief, Plaintiff alleges that the Spam Texts made by Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VIII.  FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

47. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

48. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class.

49. As a result of Defendants' (and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf) violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every Spam Text sent to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

50. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts, except for emergency purposes, to any cellular telephone numbers in the future.

## IX.  SECOND CLAIM FOR RELIEF
### (Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))

51. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

52. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by sending Spam Texts to the cellular telephone numbers of Plaintiff and members of the Class.

53. As a result of Defendants' (and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf) knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every Spam Text sent to their cellular telephone numbers in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

## X.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff on her own behalf and on behalf of the members of the Class, pray for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or their affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the Class of damages, as allowed by law;

G. An award to Plaintiff and the Class of attorneys' fees and costs, as allowed by law and/or equity;

H. Leave to amend this Complaint to conform to the evidence presented at trial; and

I. Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XI.  DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Dated: May 11, 2018

        Respectfully submitted,

By: /s/ Joseph A. Fitapelli
Joseph A. Fitapelli
Email: jfitapelli@fslawfirm.com
Frank J. Mazzaferro
Email: fmazzaferro@fslawfirm.com
FITAPELLI & SCHAFFER, LLP
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375
Facsimile: (212) 481-1333

Beth E. Terrell
Email:  bterrell@terrellmarshall.com
Adrienne D. McEntee
Email:  amcentee@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
*Pro hac vice* motions forthcoming

*Attorneys for Plaintiff and the Proposed Class*